**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| DENNIS O'TOOLE, | : | |
| | : | |
| Plaintiff, | : | Civil Action No.  04-1730 (SRC) |
| | : | |
| v. | : | **OPINION** |
| | : | |
| PHILIPS ELECTRONICS NORTH | : | |
| AMERICA CORPORATION, EUGENE | : | |
| PRENDERGAST, et al., | : | |
| | : | |
| Defendants. | : | |

**CHESLER, U.S.D.J.**

This matter comes before the Court on the motion for summary judgment by Defendants

Philips Electronics North America Corporation ("Philips") and Eugene Prendergast

("Prendergast") (collectively, "Defendants"), pursuant to FED. R. CIV. P. 56.  For the reasons set

forth below, Defendants' motion will be granted in part and denied in part.

### BACKGROUND

This case arises out of disputes over employment termination and commissions due.  The

following facts are undisputed.  Plaintiff Dennis O'Toole ("O'Toole") was first employed by

Philips in 1991.  Beginning in 1998, he was employed by Philips as a Service Sales Specialist.

Service Sales Specialists earn commissions on sales generated, pursuant to the terms of the

Service Sales Specialist Compensation Plan (the "Plan").  Prendergast became O'Toole's

supervisor in May of 2002.  Plaintiff claims he has not received all commissions due to him from

a sales transaction with Mount Sinai Hospital in 2001 and 2002, while Philips contends that he

has been paid in full under the terms of the Plan.  On October 4, 2002, Philips issued O'Toole a warning letter concerning job performance issues.  On January 10, 2003, Philips terminated O'Toole's employment.  He was age 56.

On April 15, 2004, Plaintiff filed the instant Complaint, alleging ten counts: 1) employment age discrimination, in violation of the New Jersey Law Against Discrimination ("NJLAD"); 2) aiding and abetting violation of the NJLAD; 3) age discrimination in violation of the New York Human Rights law; 4) failure to pay minimum wage in violation of the Fair Labor Standards Act; 5) breach of contract; 6) breach of the implied covenant of good faith and fair dealing; 7) malicious interference with contract rights; 8) unjust enrichment; 9) conversion; and 10) conspiracy to commit malicious interference with contract rights.

## LEGAL STANDARD

### I.    Summary Judgment

Summary judgment is appropriate under FED. R. CIV. P. 56(c) when the moving party demonstrates that there is no genuine issue of material fact and the evidence establishes the moving party's entitlement to judgment as a matter of law.  Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).  A factual dispute is genuine if a reasonable jury could return a verdict for the non-movant, and it is material if, under the substantive law, it would affect the outcome of the suit.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  "In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.'"  Marino v. Indus. Crating Co., 358 F.3d 241, 247 (3d Cir. 2004) (quoting Anderson, 477 U.S. at 255).

2

"When the moving party has the burden of proof at trial, that party must show affirmatively the absence of a genuine issue of material fact: it must show that, on all the essential elements of its case on which it bears the burden of proof at trial, no reasonable jury could find for the non-moving party."  In re Bressman, 327 F.3d 229, 238 (3d Cir. 2003) (quoting United States v. Four Parcels of Real Property, 941 F.2d 1428, 1438 (11th Cir. 1991)).  "[W]ith respect to an issue on which the nonmoving party bears the burden of proof . . . the burden on the moving party may be discharged by 'showing' – that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case."  Celotex, 477 U.S. at 325.

Once the moving party has satisfied its initial burden, the party opposing the motion must establish that a genuine issue as to a material fact exists.  Jersey Cent. Power & Light Co. v. Lacey Township, 772 F.2d 1103, 1109 (3d Cir. 1985).  The party opposing the motion for summary judgment cannot rest on mere allegations and instead must present actual evidence that creates a genuine issue as to a material fact for trial.  Anderson, 477 U.S. at 248; Siegel Transfer, Inc. v. Carrier Express, Inc., 54 F.3d 1125, 1130-31 (3d Cir. 1995).  "[U]nsupported allegations . . . and pleadings are insufficient to repel summary judgment."  Schoch v. First Fid. Bancorporation, 912 F.2d 654, 657 (3d Cir. 1990); see also FED. R. CIV. P. 56(e) (requiring nonmoving party to "set forth specific facts showing that there is a genuine issue for trial").  "A nonmoving party has created a genuine issue of material fact if it has provided sufficient evidence to allow a jury to find in its favor at trial."  Gleason v. Norwest Mortg., Inc., 243 F.3d 130, 138 (3d Cir. 2001).

If the nonmoving party has failed "to make a showing sufficient to establish the existence

of an element essential to that party's case, and on which that party will bear the burden of proof

at trial, . . . there can be 'no genuine issue of material fact,' since a complete failure of proof

concerning an essential element of the nonmoving party's case necessarily renders all other facts

immaterial." Katz v. Aetna Cas. & Sur. Co., 972 F.2d 53, 55 (3d Cir. 1992) (quoting Celotex,

477 U.S. at 322-23).

**II.     Employment Discrimination: Disparate Treatment Claims**

All disparate treatment[1] claims for employment discrimination under federal law are

analyzed by application of the McDonnell Douglas test:

> The Court in *McDonnell Douglas* set forth a burden-shifting scheme for
> discriminatory-treatment cases.  Under *McDonnell Douglas*, a plaintiff must first
> establish a prima facie case of discrimination. The burden then shifts to the
> employer to articulate a legitimate, nondiscriminatory reason for its employment
> action.  If the employer meets this burden, the presumption of intentional
> discrimination disappears, but the plaintiff can still prove disparate treatment by,
> for instance, offering evidence demonstrating that the employer's explanation is
> pretextual.  The Courts of Appeals have consistently utilized this burden-shifting
> approach when reviewing motions for summary judgment in disparate-treatment
> cases.

Raytheon Co. v. Hernandez, 540 U.S. 44, 50 (2003) (citations omitted).  The New Jersey

Supreme Court has adopted the McDonnell Douglas test for claims under all state proscriptions

against discrimination, both statutory and constitutional.  Peper v. Princeton University Board of

Trustees, 77 N.J. 55, 83 (1978) (recommending use of the McDonnell Douglas test for all

"actions brought under the Law Against Discrimination or any other State proscription against

discrimination").

---

[1]A disparate treatment case is one in which the employer treats some people less
favorably than others because of their membership in a protected class.  See Int'l Bhd. of
Teamsters v. United States, 431 U.S. 324, 335 n.15 (1977).

In <u>Monaco v. Am. Gen. Assur. Co.</u>, 359 F.3d 296, 303 (3d Cir. 2004), the Third Circuit adopted the requirements stated in <u>Swider v. Ha-Lo Indus.</u> for establishing a prima facie case of discriminatory discharge under the NJLAD:

> To make out a prima face case of age discrimination under the LAD, a plaintiff must show: (1) that he is a member of a class protected by the anti-discrimination law; (2) that he was performing his job at a level that met his employer's legitimate expectations; (3) that he was discharged; and (4) that he was replaced by someone sufficiently younger to give rise to an inference of unlawful age discrimination.

<u>Swider v. Ha-Lo Indus.</u>, 134 F. Supp. 2d 607, 621 (D.N.J. 2001).

If the plaintiff succeeds in establishing a prima facie case, the burden shifts to the defendant to "articulate some legitimate, non-discriminatory reason" for the employer's action. <u>McDonnell Douglas</u>, 411 U.S. 792, 802 (1973).  The employer may satisfy the burden by introducing evidence which, taken as true, would allow the factfinder to conclude that there was a nondiscriminatory reason for the unfavorable employment decision.  <u>St. Mary's Honor Center v. Hicks</u>, 509 U.S. 502 (1993).  The employer need not prove that the tendered reason actually motivated the decision.  <u>Texas Dep't of Cmty. Affairs v. Burdine</u>, 450 U.S. 248, 253 (1981).  The burden of proving intent remains with the Plaintiff.  <u>Id.</u>

If the defendant employer satisfies the burden, then "the plaintiff must 'submit evidence from which a factfinder could reasonably either (1) disbelieve the employer's articulated reasons or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action.'"  <u>Fakete v. Aetna</u>, 308 F.3d 335, 338 n.3 (3d Cir. 2002).  The plaintiff's evidence rebutting the employer's proffered legitimate reasons must allow the factfinder to infer that each of the employer's proffered nondiscriminatory reasons was either

a post hoc fabrication or otherwise did not actually motivate the employment action.  <u>Fuentes v. Perskie</u>, 32 F.3d 759, 764 (3d Cir. 1994).

At this stage, the burden has shifted back to the plaintiff, and the plaintiff must show, by a preponderance of the evidence, that the employer's explanation is pretextual.  <u>Id.</u>  "The test is whether the plaintiff ultimately persuades the factfinder that the employment decision was caused by bias" and that the real reason for the employer's adverse employment decision is discrimination.  <u>Id.</u>

## DISCUSSION

**I.     Defendant's motion for summary judgment on age discrimination**

Defendant moves for summary judgment on Plaintiff's three claims concerning age discrimination: 1) Count One (age discrimination under the NJLAD); 2) Count Two (aiding and abetting age discrimination); and 3) Count Three (age discrimination under New York Human Rights Law § 296(1)(a)).  Defendants argue, first, that Plaintiff has failed to make out a prima facie case of discrimination and, second, that Plaintiff cannot carry his burden of showing that Defendants' reasons for terminating him are a pretext for age discrimination.

Although Defendants have moved for summary judgment on Count Three, alleging age discrimination in violation of New York Human Rights Law § 296(1)(a), the parties have addressed only New Jersey law in their briefs, save for a single footnote in Defendants' moving brief contending that the analysis under New York law would not differ.  (Defs.' Br. 14 n.1.)

A.     <u>McDonnell Douglas</u> Step 1: the Prima Facie Case.

"The burden of establishing a prima facie case of disparate treatment is not onerous." <u>Burdine</u>, 450 U.S. at 253.  The parties do not dispute that Plaintiff has shown the first, second,

and third elements of the prima facie case.  The focus of the dispute over the prima facie case concerns the legal requirement for the fourth prong under New Jersey law.  Defendants argue that Plaintiff must "prove that he was replaced by someone sufficiently younger to permit an inference of age discrimination."  (Defs.' Reply Br. 2.)  Plaintiff contends that New Jersey law requires only that he prove that his employer sought another to perform his work after termination.  (Pl.'s Opp. Br. 10.)  The parties do not dispute that, if Plaintiff's view of the law is correct, he has made out a prima facie case.

In support of its position, Philips relies principally on the Third Circuit's decision in Monaco, 359 F.3d at 303.  The Monaco panel surveyed New Jersey case law and concluded that New Jersey requires use of the more stringent formulation of the fourth prong: "the replacement employee must be sufficiently younger than the replaced employee."  Id. at 303.  The Third Circuit stated that, in the absence of guidance from the New Jersey Supreme Court on the particular issue before it, it would predict how that Court would rule.  Id.

Plaintiff fails to recognize both the holding of Monaco and its status as controlling authority.  Plaintiff points to no New Jersey case following Monaco in which the New Jersey Supreme Court held that the Third Circuit predicted its position incorrectly.[2]  Under Monaco, to establish a prima facie case of discrimination, Plaintiff must establish that he was replaced by a "sufficiently younger" employee.  Id.

The parties do not dispute that, after O'Toole was terminated, his sales territory was

---

[2] The New Jersey Supreme Court did decide a discriminatory discharge case under the NJLAD after Monaco, Zive v. Stanley Roberts, Inc., 182 N.J. 436, 454 (N.J. 2005).  There is dicta in Zive that supports Plaintiff's argument.  The issue before the Zive court, however, was not the fourth prong of the analysis but the second.  Because the New Jersey Supreme Court has not stated a holding contradicting Monaco, that case is controlling authority.

handled by Thoman, who was age 58 at the time – two years older than O'Toole. This undisputed fact precludes Plaintiff from establishing that the replacement employee was younger than the replaced employee. Plaintiff argues, nonetheless, that there is a factual dispute which precludes summary judgment. (Pl.'s Opp. Br. 15-16.) Plaintiff does not explain what the factual dispute is, however, and suggests – without articulating this clearly – that, because Thoman was an existing employee at the time O'Toole was terminated, he cannot be considered a replacement. Plaintiff offers no explanation for why the existing employee who took over O'Toole's job responsibilities should not be considered the replacement for purposes of the prima facie case. Indeed, the fact that Philips gave O'Toole's responsibilities to an older employee appears more relevant to the issue of age discrimination than the allegation that a younger employee ended up with them one year later.

Plaintiff has failed to establish the fourth prong of the prima facie case under Monaco. While Plaintiff's direct evidence of discrimination might conceivably constitute some support for a claim under Price Waterhouse v. Hopkins, 490 U.S. 228 (1989), no such argument has been made in this case. Plaintiff has made only a McDonnell Douglas argument which has not succeeded. As such, Defendants' motion for summary judgment on Plaintiff's age discrimination claim under the NJLAD, Count One, will be granted.

Defendants move for summary judgment on Counts Two and Three as well. As Defendants observe, Count Two alleges that Prendergast aided and abetted Philips in age discrimination (since Dockendorf has been dismissed as a defendant and no Doe defendants have been identified.) Because this Court holds that Plaintiff has failed to prove that Philips engaged in age discrimination in violation of the NJLAD, he cannot prove his claim of aiding and abetting

8

violation of the NJLAD against Prendergast.  Defendants' motion for summary judgment on Count Two will be granted.  As to Count Three, for age discrimination under New York law, Defendants have not briefed this sufficiently to show that they are entitled to judgment as a matter of law.  Defendants' motion for summary judgment on Count Three will be denied.

## II.      Defendants' motion for summary judgment on the commission claims

Defendants moves for summary judgment on Counts Five, Six, and Eight, Plaintiff's claims for breach of contract, breach of the implied covenant of good faith and fair dealing, and unjust enrichment, relating to commissions due under the Service Sales Specialist Compensation Plan.  In brief, Defendants argue that the express terms of the Plan empower the Vice President of Service and the Vice President of Human Resources of Philips to make a final determination as to any interpretation of the Plan.  Defendants state that the Vice President of Customer Service Sales, Mr. Dockendorf, issued a final determination denying that claim.  Defendant contends that, under New Jersey law, as reflected in the Third Circuit's decision in Goldstein v. Johnson & Johnson, 251 F.3d 433, 436 (3d Cir. 2001), contract clauses may grant administrators the discretion to "construe the terms of the plan, subject to the implied duty of good faith and fair dealing."  In such cases, as the Court stated in Goldstein, "courts retain the authority to review the administrator's compliance with that duty to exercise discretion in good faith."  Id.

Defendants have not shown that they are entitled to judgment as a matter of law on these claims.  To begin with, Defendants contradict themselves in their opening brief: Defendants state that "[q]uite obviously, as a matter of black letter hornbook law, there was no enforceable contract in place" as of December 31, 2001 (Defs.' Br. 21), but then argue that the "transaction" had "two pieces," one of which was completed in 2001 and one in 2002.  (Defs.' Br. 22-25.)

Moreover, Plaintiff offers the deposition testimony of Joseph Graham, director of service sales at

Philips for the east and central regions.  (Zuckerman Cert. Ex. D 7:4-9.)  At the deposition,

Graham agreed that it was "a clear-cut case" that Plaintiff was entitled to the commissions he

seeks.  (Zuckerman Cert. Ex. D. 133:20-134:16.)  A reasonable jury could conclude from this

evidence that Philips' management did not comply with the duty to exercise its discretion in good

faith.  Graham's testimony is sufficient to raise a factual issue for trial as to whether Philips met

its good faith obligations.  Defendants' motion for summary judgment on Counts Five, Six and

Eight will be denied.

III.   **Defendants' motion for summary judgment on the remaining counts**

Defendants move for summary judgment on Count Four, for violation of the Fair Labor

Standards Act ("FLSA"), Count Seven, for malicious interference with contract rights, Count

Nine, for conversion, and Count Ten, for conspiracy to commit malicious interference with

contract rights.  Plaintiff has not opposed the motion for summary judgment on these claims.

As to Count Four (violation of the Fair Labor Standards Act), Defendants argue that,

while Plaintiff invokes the Fair Labor Standards Act's minimum wage requirements, Plaintiff has

pointed to no failure to pay him minimum wage – Plaintiff complains, rather, of failure to pay

commissions due under the Plan – and refers to no specific provision or violation of the FLSA.

Plaintiff has pointed to no evidence that Defendants failed to pay him the minimum wage

mandated by FLSA, and Defendants' motion for summary judgment on Count Four will be

granted.

As to Count Seven (malicious interference with contract rights), Defendants contend that

no cause of action may lie under New Jersey law where, as here, the party alleged to have

interfered with the contract is an agent of the contracting party.  This is correct.  New Jersey does not allow an action for interference with contract rights "where the claim is by one party against the other party to the contract and not against a third party interloper who has interfered with the contractual relationship."  Sandler v. Lawn-A-Mat Chemical & Equipment Corp., 141 N.J. Super. 437, 450 (N.J. Super. Ct. App. Div. 1976); see also Printing Mart-Morristown v. Sharp Electronics Corp., 116 N.J. 739, 752 (N.J. 1989) (citing Sandler for this "fundamental" principle).  As an employee of Philips, Prendergast is an agent of a party to the contract with Plaintiff and cannot be an interfering third-party interloper.  Defendants have shown that they are entitled to judgment as a matter of law, and Defendants' motion for summary judgment on Count Seven will be granted.

As to Count Nine (conversion), Defendants argue: 1) because Plaintiff is not entitled to the commissions at issue, there can be no action for conversion; and 2) failure to pay under a contract gives rise to an action for breach, not an action for the tort of conversion.  Under New Jersey law, the tort of conversion requires "an unauthorized act of dominion over the property to the exclusion of the other person's rights."  Dynasty Bldg. Corp. v. Ackerman, 376 N.J. Super. 280, 286 (N.J. Super. Ct. App. Div. 2005).  As Defendants contend, this is a dispute over payment under a contract, not a situation in which Philips has exercised an unauthorized act of dominion over property in which Plaintiff held legal or equitable title.  Defendants are entitled to judgment as a matter of law on Count Nine.  Defendants' motion for summary judgment on Count Nine will be granted.

As to Count Ten, alleging conspiracy between Defendants Dockendorf and Does (1-10), Defendants contend that summary judgment is appropriate because Dockendorf has been

11

dismissed from the case and no Doe defendants have ever been identified.  Dockendorf was

dismissed as a defendant in this Court's Order of July 23, 2004, and no Doe defendants are

identified in the Final Pretrial Order of March 24, 2006.  Defendants have shown that they are

entitled to judgment as a matter of law, and Defendants' motion for summary judgment on Count

Ten will be granted.

## CONCLUSION

For the reasons stated above, Defendants' motion for summary judgment is denied in part

and granted in part.  As to Counts One, Two, Four, Seven, Nine, and Ten, this Court determines

that Defendants have demonstrated that "there is no genuine issue as to any material fact and that

[they are]  entitled to a judgment as a matter of law."  FED. R. CIV. P. 56(c).  Defendants' motion

for summary judgment is granted in part as to Counts One, Two, Four, Seven, Nine, and Ten.  As

to the remaining Counts, Defendants' motion for summary judgment is denied in part.


    s/ Stanley R. Chesler
STANLEY R. CHESLER, U.S.D.J.


Dated: October 23, 2006